THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JERÓNIMO CALDERÓN, Defendant-Appellant.

First District (4th Division)   No. 1—92—1833

Opinion filed April 14, 1994.

Rita A. Fry, Public Defender, of Chicago (Michael Davidson and Alison Edwards, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Susan Schierl, and Jon J. Walters, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

After a bench trial in the circuit court of Cook County, defendant, Jerónimo Calderón, was convicted of aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(a)(2)) and criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(a)(3)). He was sentenced to an eight-year term in the Illinois Department of Corrections for aggravated criminal sexual assault, the other conviction merging.

On appeal, defendant contends (1) he was not charged within the applicable statute of limitations; (2) he received ineffective assistance of counsel; (3) he was not proved guilty beyond a reasonable doubt as there was a fatal variance between the indictment and the evidence; and (4) his impregnation of his daughter was not proved beyond a reasonable doubt.

We affirm.

The following relevant facts were adduced at trial. Defendant began to have sexual relations with his daughter, M.C., when she was 14 years old and these relations continued for approximately five years. M.C. testified that defendant is the father of her daughter, V.C., who was born on June 29, 1988, when M.C. was 17 years old.

On April 29, 1991, Officer José Reyes found defendant hiding in a bedroom closet in the family home while M.C. was present, in violation of a court order prohibiting defendant's presence in the house. Officer Reyes arrested defendant and took him to the police station. At the station, defendant gave a written statement to police and to Assistant State's Attorney Roger Peña, stating that he had a sexual relationship with M.C. and that he was the father and the grandfather of her daughter, V.C. That same day, the officer interviewed M.C., who stated that defendant was the father of her child.

At the conclusion of trial, defendant was convicted of the criminal sexual assault and the aggravated criminal sexual assault of M.C. He was subsequently sentenced to an eight-year term of imprisonment in the Illinois Department of Corrections. He appeals.

■ Initially, defendant posits that the charges regarding M.C. were not brought within the applicable statute of limitations.

Defendant predicates his argument on section 3—6(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 3—6(c)). The pertinent language provides: "A prosecution for any offense involving sexual conduct or sexual penetration *** where the victim and defendant are family members *** may be commenced within one year of the victim attaining the age of 18 years." Accordingly, he postulates that as his most recent act of sexual intercourse with M.C. occurred when she was 15 years old and as he was not charged with an offense respecting his conduct toward M.C. until she was 20 years old, the charges were not properly brought against him.

As an introductory note, this assertion is unsupported by the record. A review of the record demonstrates that defendant engaged in sexual intercourse with his daughter after she was 15 years old. Most indicative of this fact is defendant's acknowledgement that he is the father of M.C.'s daughter, V.C., who was born on June 29, 1988, when M.C. was 17 years old.

Regarding the statute of limitations, defendant suggests that section 3—6(c) of the Criminal Code of 1961 somehow limits the time period in which an action may be brought against him for aggravated criminal sexual assault. However, this contention is a misapplication of section 3—6.

An examination of section 3—6 reveals that it is entitled "Extended Limitations." The committee comments for the section explain that the section's purpose is "to permit increases in the general time limitations with respect to certain offenses which are capable of being readily concealed by the offender, from both the victims and the law enforcing authorities, over substantial periods of

time and beyond the general limitations applicable to those offenses." (Ill. Ann. Stat., ch. 38, par. 3—6, Committee Comments, at 176 (Smith-Hurd 1989).) This section is to be construed in conjunction with section 3—5 of the Criminal Code of 1961, which states that the prosecution for felonies, such as the offenses with which defendant was charged, "must be commenced within 3 years after the commission of the offense." Ill. Rev. Stat. 1991, ch. 38, par. 3—5(b).

Our inquiries respecting the statute of limitations need not extend beyond the application of section 3—5 to defendant. The facts establish that defendant and his daughter had a child on June 29, 1988. Under these circumstances, the statute of limitations begins to run at the time of the child's birth, rather than when the actions resulting in the birth took place. Therefore, under section 3—5, an action must have been brought against defendant by June 29, 1991, three years after the manifestation of his acts. As the proceedings against defendant commenced on April 20, 1991, approximately two months before the expiration of the period, there was no violation of section 3—5. As the action against him was properly brought pursuant to section 3—5, we need not consult section 3—6.

■ Next, defendant maintains that he was denied effective assistance of counsel as defense counsel failed to raise the statute of limitations issue either at trial or in the post-trial motion.

It is widely recognized that an ineffective assistance of counsel claim must be brought pursuant to the standards promulgated by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. *Strickland* places the burden on defendant to show that counsel's conduct was deficient, falling below an objective standard of reasonableness and to demonstrate that he was "depriv[ed] *** of a fair trial, a trial whose result is reliable." (*Strickland*, 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) Further, defendant must establish the existence of a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) Finally, an ineffective assistance of counsel claim may fail if it is determined that defendant was not prejudiced by counsel's conduct. *People v. Odle* (1992), 151 Ill. 2d 168, 172-73.

The action against defendant was properly brought in complete accord with the relevant statute of limitations. Thus, defense counsel's failure to raise the statute of limitations defense either at trial or in the post-trial motion is of no consequence. "[A]n attorney's performance will not be said to be deficient due to a failure to bring a futile motion." (*People v. Hall* (1986), 114 Ill. 2d 376, 408.) Here, it

cannot be maintained that the failure to raise the statute of limitations defense at any juncture of the proceeding was improper or prejudiced defendant to the extent that the *Strickland* standards were violated.

■ Next, defendant opines that his convictions must be reversed as the counts in the indictment were in fatal variance with the evidence presented.

Defendant was charged with the criminal sexual assault and the aggravated criminal sexual assault of M.C. during the period of January 1, 1987, to January 1, 1991. The evidence adduced at trial demonstrated that he engaged in sexual intercourse with M.C. throughout these years. M.C. testified that she had sexual intercourse with defendant on several occasions and that he was the father of her daughter, V.C. Assistant State's Attorney Roger Peña and Officer José Reyes both testified that on April 29, 1991, M.C. told them she had been having sex with defendant for five years. This period encompasses approximately 1986 to 1991, which includes the interval of the indictment. She also told them that defendant was the father of V.C. On the same day, defendant made a written statement to the police and to Peña stating that he was the father and the grandfather of V.C. The trial court heard all the evidence and believed M.C.'s testimony regarding her sexual relationship with defendant. The trial court also believed that defendant was the father of her child, who was born well within the time alleged in the indictment. We find that there is no fatal variance between the indictment and the evidence presented at trial.

■ Next, defendant asserts that he was not convicted of the aggravated criminal sexual assault of M.C. beyond a reasonable doubt.

The applicable standard of evidentiary sufficiency in sex-offense cases was clarified by our supreme court in *People v. Schott* (1991), 145 Ill. 2d 188. The court determined the test to be whether a rational trier of fact, after reviewing all the evidence in the light most favorable to the prosecution, could have found the necessary elements of the crime beyond a reasonable doubt. *Schott*, 145 Ill. 2d at 203.

Defendant cites portions of M.C.'s testimony as evidence of the State's failure to prove the essential elements of aggravated criminal sexual assault beyond a reasonable doubt. M.C. did, in fact, make conflicting statements at trial. She stated that the sexual relationship with her father ceased when she was 15 years old, although she had his child when she was 17 years old. She testified that she did not know who fathered V.C. because she was having sex with defendant and a boy from school during the same period of time. She

explained that the reason she previously identified defendant as V.C.'s father was because she "got mixed up."

The trial court, in the best position to evaluate the testimony and the credibility of witnesses, made detailed findings regarding the testimony of M.C. and the Calderón family:

"[M.C.] is a developed woman who testified that she had sexual intercourse with her father while she was seventeen years of age and under; that he fathered a baby by her. Mr. Calderon was taken into custody hiding in that house when the police arrived and gave a statement to police indicating that he did have sexual relations with his daughter and he is the father of that child. All the testimony of her having a boyfriend, having intercourse with a boyfriend, is not persuasive to me.

*** [A]ll the pressure by Mr. Calderon's wife sitting here and who has been willing to lie in court to protect her husband is an indication of what the sickness is in this family."

The trial court made an additional observation about M.C.'s testimony during the sentencing of defendant, stating: "Your daughter came in here and said that you had sexual relations with her and caused her to have a child. And I believe her."

The record reveals that on the occasions M.C. stated that defendant was the father of V.C., her mother was not present, and on the occasions when her mother was present, M.C. seemed to be confused about what she should say. The trial court did not believe M.C.'s testimony as to the existence of a boyfriend and seemed to indicate that M.C.'s mother may have exerted pressure on her to testify in a particular manner which may have resulted in the retraction of her previous affirmations (about her relationship with defendant and the paternity of her daughter) to the police and to the assistant State's Attorney. We believe that the trial court's assessment of the credibility of M.C. and its resolution of any inconsistencies or conflicts in her testimony were not improper and do not create a reasonable doubt as to defendant's guilt.

■ Finally, defendant advances three additional arguments. He asserts that his conviction for criminal sexual assault must be reversed as it is a lesser included offense of aggravated criminal sexual assault even though the trial court ruled that the lesser offense merged with the greater and even though he was only sentenced on the aggravated criminal sexual assault conviction. He also maintains that he was denied his right to a fair trial due to the trial court's biased conduct regarding M.C.'s testimony and the State's improper preparation of such testimony. Lastly, he contends that his order of sentence and commitment should be changed to reflect a six-year

term of incarceration rather than an eight-year term although the amended record and the notice of appeal reflect that he was sentenced to eight years in the Illinois Department of Corrections.

These issues, however, are not cognizable on appeal as defendant failed to both object at trial and raise these issues in his post-trial motion. Defendant's failure to preserve these issues results in their waiver on appeal. *People v. Enoch* (1988), 122 Ill. 2d 176, 186; see *People v. Arsberry* (1993), 242 Ill. App. 3d 1034, 1041.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAHILL, P.J., and THEIS, J., concur.