NOTICE

Decision filed 04/06/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190147-U

NO. 5-19-0147

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | St. Clair County. |
| v. | ) ) | No. 17-CF-862 |
| KEVIN HELFRICH, | ) ) | Honorable Zina R. Cruse, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Moore and Wharton concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The defendant was not denied his constitutional right to effective assistance of counsel at his sentencing hearing.

¶ 2   The defendant, Kevin Helfrich, drove intoxicated and was involved in a head-on collision that resulted in two deaths. He subsequently entered into an open guilty plea to one count of aggravated driving under the influence (DUI) and two counts of reckless homicide. The circuit court sentenced the defendant to 18 years in the Illinois Department of Corrections. In a direct appeal from his sentence, the defendant argues that he was denied his constitutional right to effective assistance of counsel at his sentencing hearing. For the following reasons, we affirm the defendant's sentence.

1

¶ 3                                    BACKGROUND

¶ 4      On July 8, 2017, at approximately 12:45 a.m., the defendant drove his GMC Sierra pickup truck down Illinois Route 15, traveling westbound in the eastbound lanes with his vehicle's cruise control set at 62 miles per hour. He collided head-on with another vehicle that was traveling in the proper direction and was occupied by John Bannister and Daryl Harton. Bannister and Harton died at the scene of the accident. The defendant never applied his breaks before the collision and had a blood-alcohol concentration of .250, three times the legal limit. Police officers who responded to the scene found three cans of unopened beer in the passenger compartment of the defendant's truck.

¶ 5      On November 3, 2017, the State charged the defendant with one count of aggravated DUI in violation of section 11-501(a)(1) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(1) (West 2016)). The State also charged the defendant with two counts of reckless homicide in violation of section 9-3(a) of the Criminal Code of 2012 (720 ILCS 5/9-3(a) (West 2016)) for the deaths of Bannister and Harton. The defendant appeared in court on January 23, 2019, and entered into a guilty plea to all three counts, with counts II and III merging into the aggravated DUI charge alleged in count I. The charged aggravated DUI offense was a Class 2 felony with a possible sentencing range from 6 to 28 years.

¶ 6      On March 25, 2019, the circuit court conducted the sentencing hearing. The presentencing investigation (PSI) report established that the defendant was 55 years old at the time of the accident and had three adult children. The PSI report also established that the defendant had a history of alcohol abuse that included four prior arrests for DUIs in 2000, 2009, 2015, and 2016. The defendant had been ordered to undergo alcohol

2

evaluations and counseling as a result of these past DUIs. The most recent past DUI occurred on October 16, 2016, and the defendant was ordered to submit to alcohol counseling.

¶ 7 The prosecutor told the circuit court that the defendant's discharge date from his most recent alcohol counseling was March 2, 2017, which was four months before the head-on collision killing Bannister and Harton. The defendant's discharge summary stated, "Client reports he is no longer drinking to intoxication, and has realized the financial and nonfinancial consequences of his past abusive drinking patterns." However, the PSI report established that approximately three months after being discharged from the most recent alcohol treatment (one month prior to the head-on collision at issue in this case), the defendant was cited for having an open container of alcohol in his truck.

¶ 8 At the sentencing hearing, the State also highlighted a doctor's statement in the PSI report that the defendant's medical history included significant alcohol abuse. The State argued that these prior incidents and treatments showed "a major disconnect between what the defendant reports to counselors and also medical professionals and his family members, and reality." The State believed that the defendant had not been honest with his counselors during the previous alcohol abuse treatments he received.

¶ 9 The State further highlighted the aggravating factors that it felt were applicable, argued that the circumstances of this case were extraordinary circumstances due to the extreme level of intoxication and the defendant's disregard "for all these past attempts to right that problem," told the circuit court that the defendant was not a candidate for rehabilitation, and recommended a sentence of 24 years in the Illinois Department of

3

Corrections. The State also presented victim impact statements from Bannister's and Harton's families.

¶ 10 The defendant's attorney presented the testimony of the defendant's sister who told the circuit court about the defendant's character and remorse. The defense also presented testimony from the defendant himself. The defense attorney argued that the defendant had accepted responsibility by pleading guilty to the offense. The defense also noted that the defendant received supervision or probation for all his prior DUI offenses and that the State never filed any petitions to terminate supervision or probation or objected to successfully closing those prior cases. The defendant's attorney emphasized the defendant's good character based on his sister's testimony and a package of handwritten letters written on behalf of the defendant.

¶ 11 As part of his argument for leniency, the defendant's attorney told the circuit court that there had been four individuals sentenced for aggravated DUI in St. Clair County since 2016. The defense attorney stated, "One got probation. Three have been sentenced to prison, five years, seven years, and fifteen years." The defendant's attorney told the circuit court that the defendant who was sentenced to 15 years killed two people, had prior felonies, weaved through traffic driving 110 miles an hour, possessed a gun and drugs, and tried to destroy evidence. In contrast, the defense argued that the defendant in the present case had no prior felony convictions and was unlikely to commit another crime.

¶ 12 The defense attorney then argued the factors in mitigation including that the defendant did not contemplate that his actions were going to cause harm and that he was

4

likely to comply with conditions of probation. In allocution the defendant apologized to Bannister's and Harton's families.

¶ 13    In sentencing the defendant to 18 years in the Illinois Department of Corrections, the circuit court stated that it considered the factual basis for the offense; the PSI report; the history, character, and attitude of the defendant; the evidence and arguments presented at the sentencing hearing; and the aggravating and mitigating factors. The circuit court found that there were no extraordinary circumstances that would justify a "probationable offense." The circuit court described the case as "an absolute tragedy" that resulted from poor choices rather than resulting from the defendant being "a poor person in character and in spirit and in personality." The circuit court stated that it looked at one of the cases referred to by the defense attorney where the defendant received a 15-year sentence and concluded that there was no evidence in that case that the defendant drove drunk "over and over." The circuit court told the defendant that the defendant had used all of his chances for freedom during his previous arrests for DUI. The defendant now directly appeals his sentence, arguing that he received ineffective assistance of counsel at the sentencing hearing.

¶ 14                                    ANALYSIS

¶ 15    The only issue the defendant raises on appeal is a claim that his attorney was constitutionally ineffective at the sentencing hearing. Specifically, the defendant contends that his attorney was ineffective for comparing his case with the four other unrelated aggravated DUI cases from St. Clair County since 2016.

¶ 16    We evaluate a defendant's claim of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by the supreme court in *People v. Albanese*, 104 Ill. 2d 504 (1984). *People v. Moore*, 356 Ill. App. 3d 117, 121 (2005). "Under this test, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Henderson*, 2013 IL 114040, ¶ 11. "This means the defendant must show that counsel's errors were so serious, and his performance so deficient, that he did not function as the 'counsel' guaranteed by the sixth amendment." *People v. Perry*, 224 Ill. 2d 312, 342 (2007). Because the defendant has raised his claim of ineffective assistance of counsel for the first time on appeal, our review is *de novo*. See *People v. Lofton*, 2015 IL App (2d) 130135, ¶ 24. In the present case, the defendant has failed to establish either prong of the *Strickland* standard. The defendant has not established that his counsel's performance at the sentencing hearing was professionally deficient or that he was prejudiced by his counsel's performance at the sentencing hearing.

¶ 17    First, with respect to the first prong of the *Strickland* standard, *i.e.*, whether counsel's performance was professionally deficient, we note that the defendant's complaint about his attorney's performance is a complaint that is directed at a strategy decision made by the attorney. Asking the circuit court to consider the sentences in four unrelated cases involving aggravated DUI was a matter of strategy.

¶ 18    A decision that involves a matter of strategy will typically not support a claim of ineffective assistance of counsel. *People v. Custer*, 2019 IL 123339, ¶ 39. A strategy

6

decision may be attacked under the rubric of ineffective assistance of counsel only where trial counsel "entirely fails to conduct any meaningful adversarial testing." (Internal quotation marks omitted.) *Id.* Here, the defense attorney's performance at the sentencing hearing subjected the State's request for a 24-year sentence to meaningful adversarial testing and, in fact, secured a sentence that was 6 years less than the State's recommendation. Therefore, the defense attorney's strategy decision does not constitute ineffective assistance of counsel.

¶ 19 The defendant argues that his attorney's reference to other unrelated cases was inherently flawed because our supreme court has rejected sentencing challenges based on the comparison of sentences imposed in other cases. In *People v. Fern*, 189 Ill. 2d 48, 55 (1999), our supreme court held that *reviewing courts* could not evaluate the excessiveness of a lower court's decision by comparing sentences imposed in other unrelated cases. However, the *Fern* court also suggested that, in fashioning a sentence, the *circuit court* can, in fact, consider its knowledge of the sentences imposed in other cases. *Id*. at 62. Accordingly, in the present case, the defense attorney's decision to compare the present case with the four other aggravated DUI sentences was not an inherently flawed argument.

¶ 20 The circuit court stated that it reviewed one of the cases highlighted by the defendant's attorney, a case involving an aggravated DUI and the death of two people. The defendant in that case received a 15-year sentence. The circuit court found that this unrelated case was not comparable with the present case because the defendant in the present case continued to drive drunk "over and over" after being given multiple

opportunities to change his behavior with supervision and counseling after four previous DUI arrests.

¶ 21 In *Fern*, the supreme court noted that comparing sentences in unrelated cases has limited usefulness because people who commit crimes independently are seldomly, if ever, similarly situated and because no two cases are ever truly the same. *Id.* at 57-59. As the State points out in its brief, the defendant's attorney understood the limitations of this line of argument by acknowledging in his argument that all cases are unique. Nonetheless, the defense strategy of asking the circuit court to consider a lighter sentence in light of the comparable cases was not inherently improper even though the comparison was rejected by the circuit court. In addition, the comparison strategy was only a small part of the defense attorney's performance at the sentencing hearing.

¶ 22 At the sentencing hearing the defendant's counsel highlighted multiple factors in mitigation, including that the defendant did not contemplate or intend any harm to others, that the defendant had no prior felonies, that the defendant was unlikely to commit another crime, that the defendant would comply with the terms of probation, and that incarceration would cause an excessive hardship to his family. See 730 ILCS 5/5-5-3.1 (West 2018) (setting out factors in mitigation). The defendant's attorney also presented the circuit court with handwritten letters attesting to the defendant's good character, which the circuit court reviewed and considered. The defendant's attorney presented the testimony of the defendant's sister who testified about the defendant's remorsefulness, good character, and his involvement in the care of the sister's disabled son and their disabled father who had suffered a brain aneurysm years ago. The sister's testimony provided part of the factual

8

basis for defense counsel's argument that the defendant was remorseful, capable of rehabilitation, and was a good man who fulfilled a caretaking role in his family.

¶ 23    When we consider the entire record in this case, we cannot conclude that the defendant's attorney committed any error at the sentencing hearing in arguing for a lenient sentence by comparing the sentences in other cases. As a result, the defendant failed to satisfy the first prong of the *Strickland* standard. *People v. Simpson*, 2015 IL 116512, ¶ 35.

¶ 24    Second, with respect to the second prong of the *Strickland* standard, the defendant has not established any prejudice from the claimed error. To establish prejudice from a defense attorney's performance at a sentencing hearing, a defendant must show that a reasonable probability exists that his sentence was affected by the error. *People v. Brisbon*, 164 Ill. 2d 236, 246 (1995). "[A]n ineffectiveness claim can often be disposed upon a showing that a defendant suffered no prejudice from the claimed errors without deciding whether the errors constituted constitutionally ineffective assistance of counsel." *People v. Odle*, 151 Ill. 2d 168, 172-73 (1992). In the present case, the defendant's ineffectiveness claim fails because he suffered no prejudice from his attorney's argument at the sentencing hearing.

¶ 25    It is well established that "[t]he most important sentencing factor is the seriousness of the offense, and the court need not give greater weight to rehabilitation or mitigating factors than to the severity of the offense." *People v. Charles*, 2018 IL App (1st) 153625, ¶ 47. Here, the circuit court specifically stated that the defendant's sentence was related to the defendant's inability to drive sober despite multiple arrests for DUI and court-ordered counseling. Although the circuit court ultimately rejected the defense attorney's

comparison with the four unrelated cases, nothing in the record suggests that rejection of this argument impacted the length of the sentence that the circuit court ultimately imposed. In fact, as noted by the State, the circuit court imposed a sentence that was six years less than the sentenced recommended by the State. Based on the circuit court's comments at the sentencing hearing, the record establishes that the defendant's sentence was due to his continual drinking and driving, not because his attorney made an unpersuasive comparative sentencing argument.

¶ 26    The defendant chose to drive when he was extremely intoxicated, resulting in the needless deaths of Bannister and Harton. The tragic nature of this offense cannot be understated. The defendant had been given multiple opportunities in the past to correct his behavior, but he was less than honest with his counselors about his drinking. He had completed his last round of counseling just four months prior to the fatal accident and had told the counselors that he was no longer drinking to intoxication and that he finally recognized the consequences of his drinking patterns. He received a citation for open container of alcohol shortly after this counseling and just one month prior to the head-on collision killing Bannister and Harton. The prosecution outlined several aggravating factors that applied, including that the defendant drove in the opposite direction of traffic. See 730 ILCS 5/5-5-3.2(a)(31) (West 2018). The aggravating factors justified the circuit court's sentence. Under these facts, the defendant has failed to establish the prejudice prong of the *Strickland* test.

¶ 27 Based on the analysis above, we conclude that the defendant has failed to satisfy either prong of the *Strickland* standard and, therefore, has failed to demonstrate that he received ineffective assistance of counsel at his sentencing hearing.

¶ 28 CONCLUSION

¶ 29 For the foregoing reasons, we affirm the defendant's sentence.

¶ 30 Affirmed.